# The Board of Supervisors of Clay County
## *v.*
## Levi M. Plaut.

1. Counties — *liability to support paupers.* The duty of supporting the paupers resident in the various counties in this State is imposed upon such counties ; and they are bound by all contracts for the support of such persons, when legally entered into by the proper officer.

2. Overseer of the Poor — *his duty.* Under the township organization law in this State, each town is required to elect an overseer of the poor, and he alone is authorized and required to perform the duties of the office. Where such an agent has entered into a contract for the support of a pauper, the liability of the county is thereby fixed, and its agents have no discretion, but must discharge the obligation. Nor can the chairman of the board of supervisors in such a case, by notice or otherwise, abridge the powers of the overseer of the poor. He derives his powers from the law and not from the supervisors.

3. Same. Where an overseer of the poor shall make an improvident or extravagant contract for the support of a pauper, the board of supervisors may, no doubt, reduce the amount to be paid, but, until they act, the contract, if fair and unaffected by fraud, will bind the county.

4. Overseer of the Poor — *his contracts.* Under the township organization law, it is not necessary that the justices of the peace of the town shall join with the overseer of the poor in ordering goods for the support of a pauper: he may act alone.

5. Same — *bond for the support of a pauper.* The bond required to be given by the person contracting to support a pauper, is designed to indemnify the county against further expense in supporting the pauper, but not to absolve it from the duty. And if the person agreeing to support the pauper fails through inability or otherwise to do so, the county must still afford the relief, and must look to the person with whom they contracted, and his securities for

indemnity for the loss. If the overseer fails to take a bond, and the person with whom he has contracted fails to support the pauper, he should then, if within his power, contract with some other person, or, failing in that, he should furnish such articles as are adapted to the necessities of the pauper, and hire a suitable person on the best terms he can, to keep him.

6. SAME—*fraud.* If the overseer of the poor should act in bad faith, or is guilty of fraud, and the county thereby became the loser, he would, it seems, be liable for the loss. Or, if the person furnishing the support was a party to such fraud, he would be unable to recover against the county. Good faith and fair dealing is imperatively required in the discharge of these duties.

7. SAME—*his powers.* It has, in practice, always been supposed, that when an overseer of the poor is unable to procure any contract for the support of a pauper, and no poor-house has been provided, or in cases of urgency, he may purchase necessary articles for the relief of the pauper, on the credit of the county, and thus render it liable for payment.

8. VERDICT—*proof.* Where the evidence shows, that the articles furnished were necessary for the comfort of the pauper, or to pay for keeping him, and it does not appear that the prices charged were unreasonable, under the circumstances, and, where it appears that no other person could be procured to keep the pauper, a recovery will not be therefor disturbed.

WRIT OF ERROR to the Circuit Court of the county of Clay; the Hon. AARON SHAW, Judge, presiding.

This was an action of assumpsit brought by Levi M. Plaut, in the Circuit Court of Clay county, against the board of supervisors of that county. The declaration contained the common counts for goods, wares and merchandise sold and delivered. The general issue was pleaded.

A trial was had before the court, a jury having been dispensed with by agreement of the parties. After hearing the evidence, the court found the issues for the plaintiffs. Defendant thereupon entered a motion for a new trial, which was overruled by the court, and judgment rendered for $37.92, in favor of plaintiff. To reverse that judgment, defendant brings the case to this court on error.

Mr. SILAS L. BRYAN, for the plaintiff in error.

Mr. R. P. HANNA, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears from the record in this case, that one Thompson had become a charge to the county of Clay; that Phelps, the overseer of the poor, had let his support to the lowest bidder, and his mother became the contractor, for the sum of two dollars per week; that he was kept by her until his death. His mother was of very limited means, and the pauper became very sick, and the mother was unable to support him while he was in that condition, at the price agreed upon by her; that De Witt, the overseer who succeeded Phelps, tried to get some other person to keep the pauper, but did not succeed; that he made arrangements with defendant in error to furnish such articles as he might order for Mrs. Thompson; that the account sued on was correct, and consisted of groceries and dry goods, to the amount of $73.92; that the overseer was not exact in confining the amount to two dollars per week, but ordered such articles as were necessary; that he gave orders for what was required to make the pauper comfortable, and to pay Mrs. Thompson for keeping him. It also appeared, that the chairman of the board of supervisors directed the overseer of the poor not to exceed two dollars per week, in the expense of keeping this pauper.

It appears, that the account was credited by a payment of thirty-six dollars; and plaintiffs in error offered to prove that the amount paid on the account was two dollars per week during the time Mrs. Thompson kept the pauper, but the court rejected the evidence, to which an exception was taken. The court found for plaintiffs below the sum of $37.92, and rendered judgment against plaintiffs in error for that sum.

Inasmuch, then, as Mrs. Thompson was too poor to keep the pauper in the manner his condition required, and, as he was very ill, and required much and close attention, it became an imperative duty devolving on some one to afford him relief. And, as others could not be induced to keep him for the sum agreed to be paid to her, the dictates of common humanity

demanded that relief should be afforded. It seems, that the circumstances then existing admitted of but one solution,— either that relief should be afforded by the county upon which the burden of supporting such paupers is imposed, or he should be permitted to die of destitution and want of attention. All admit, that the county is required to make provision for its resident paupers; and the law has designated a particular officer, required to be elected in each town, whose duty it is to care for and make provision for their support, at the expense of the county.

To ascertain whether the county in this case is liable, it will be necessary to refer to the statutory provisions on the subject, and to ascertain whether they have been observed in this case. By the sixth section of the chapter entitled " Paupers," R. S. 403, it is made the duty of the justices of the peace of their respective districts, and a person to be appointed for the purpose by the county commissioners' court, " diligently to inquire after all persons unable to earn a livelihood in consequence of bodily infirmity, idiocy, lunacy or other unavoidable cause, and to provide for them the necessary comforts of life, by confiding the care of such poor person or persons to some moral and discreet householder or householders in the district, of sufficient ability to provide for them." The same section also requires the execution of a bond, by the person to whose care the poor person is confided, conditioned that he will treat such person with humanity and afford him or her necessary attention and the comforts of life fitted to his or her condition; and it is required that the bond shall state the sum to be given by the county for keeping such poor persons.

The seventh section of this act requires these persons to make a full report of their actings and doings under that chapter, to each session of the county commissioners' court, with a list of all the poor within their respective districts. And the eighth section declares, that, upon the making of such report, it shall be the duty of " the county commissioners' court to make such appropriations as will justify the person having the custody of any poor person, in affording to him or her suitable

clothing, and such comforts as may be suitable to their state and condition." Sections nine and ten provide that the county commissioners may lessen or increase the sum named in the bond, required by the sixth section, or at any regular term remove the pauper from the custody of the person to whom he or she has been committed. The eleventh section requires the overseers, in fixing the amount to be paid for the support of a pauper, to take into account his or her ability to labor.

When our present township organization law was adopted, the office of overseer of the poor was made elective in those counties adopting that law for their government. It is declared, by the second section of the fourth article of that act (Haines' Town. Laws, 23), that there shall be chosen, at the annual town meeting, in each town, one overseer of the poor. The sixteenth section of the fifth article requires that he shall be elected by ballot. The second section of the sixth article requires him to take the oath of office. The seventeenth section of the same article requires the overseer of the poor, so soon as he is qualified, to call upon his predecessor for all books and papers pertaining to his office; and the nineteenth section requires him to pay over all money in his hands and belonging to his office. The fifteenth section of article fifteen is this: " It shall be the duty of the board of supervisors to take charge of the poor and management of the poor-house in their respective counties. And overseers of the poor of the several towns shall be accountable to, and their compensation and accounts shall be audited by, the board of supervisors, and paid by the county." The second section of the eleventh article fixes the compensation of the overseer of the poor. These seem to be all the statutory provisions relating to his office, and from them his rights and powers flow, and by them his liabilities and duties are imposed; and by these provisions his acts must be tested.

The third section of the pauper act imposes the duty of maintaining and supporting resident paupers, on the several counties of this State; and the other provisions to which reference has been made, are only designed to afford the best

means of carrying this duty into effect. And, where the agents thus designated by the law have, in compliance with the law, entered into contracts for the support of such poor persons, the liability of the county becomes fixed, and the agents of the county have no discretion, but must discharge the obligation. Nor can the action of the chairman of the board, by notice or otherwise, limit or abridge the powers of the overseer of the poor. That officer derives all of his powers from the law, and not from the presiding officer of the board of supervisors, or from the board itself. When the overseer of the poor has made an improvident and extravagant contract for the support of a pauper, that body may, no doubt, when it is reported to them, reduce the amount; but, until such action is had by the board, the contract, if fair and unaffected by fraud, will be binding on the county.

The objection is urged in this case, that the justice of the peace of the town did not join in ordering the goods sent for in this case, and, for that reason, the county is not bound for their payment. This depends upon whether, under the township organization law, justices of the peace are officers who are required to act in the execution of the poor laws. And, from the examination which we have been able to give the question, we think they are not, and that the whole duty devolves on the overseer in his town. The township organization law nowhere refers to such duty as devolving upon the justices of the peace. The sixth section of the law of 1845, it will be observed, makes the person appointed for the purpose, and the justices of the peace of their district, overseers of the poor, and requires them to act in conjunction. And the seventh section requires them, as overseers of the poor, to report their acts to the commissioners' court. But the fifteenth section of the fifteenth article of the township organization law, only requires the overseer, elected as such by the town, to account to the board of supervisors. Had the legislature intended that the justices of each town should continue to act as overseers of the poor, they would no doubt have required them to account to the board of supervisors. They could not have intended to

continue the two justices of the peace in each town to act as overseers, with the power to control the action of the overseer of the poor, and not be liable to account for their action, but leaving him responsible alone for what he may never have assented to or approved. We are therefore satisfied, that, under the law as it now stands, the justices of the peace, in counties acting under this law, are not overseers of the poor, and that the officer elected as such by the town is the only person required to perform the duty.

The bond required by the law, of the person having the custody of the pauper, is designed to indemnify the county in the expense incurred, on account of such pauper. But the making of the contract and the taking of the bond do not absolve the county from liability. If the contractor for the support of the pauper fails, from inability or other cause, to support the pauper, the county through the overseer of the poor must afford the support, and must look to the person with whom they have contracted, alone, or to him and his sureties on the bond, for an indemnity. If, then, the overseer fails to take a bond, and the person to whom he has intrusted the care and support of the poor person is unable to perform his contract, it would be the duty of that officer, if within his power, to procure another contract, or, if unable to do so, to furnish such articles as are adapted to the condition of the pauper, and to hire some suitable person, on the best terms he can, to keep him.

If the overseer of the poor should act in bad faith, or should be guilty of fraud in the discharge of his duty, and the county should thereby become the loser, he would no doubt be liable for the loss. Or if the person who furnished the articles for the support of the pauper was a party to such fraud, he would be unable to recover. Good faith and fair dealing are as imperatively required in the discharge of these duties, as is required of individuals in their business.

In this case fraud is not urged as a defense. If it existed, there is no evidence that defendant in error was a party to it. The evidence fails to disclose the fact that he had any notice that there was any contract to support the pauper at two

dollars a week, or that the chairman of the board had forbid the expenditure of that sum, although that could not have changed the liability of the county, but on a question of fraud perhaps might have had some weight. It has always, in practice under this law, been supposed, that the overseer of the poor had power, in case persons could not be found to take care of such persons, and there is no poor-house, or in cases of urgency, to purchase necessary articles on the credit of the county, and to render it liable for the payment. The overseer of the poor is the authorized agent of the county, and if defendant acted in good faith he has his remedy against the county.

The overseer of the poor testified, that he considered the articles furnished as necessary for the comfort of the pauper, or to pay for keeping him. And we find no evidence that the amount paid was unreasonable under the circumstances. Nor was there any evidence which tended to prove that Mrs. Thompson was able to have performed her agreement, or that some one else could have been got to keep the pauper for two dollars a week. On the contrary, the proof shows that she was very poor and destitute, and that no other person could be procured to keep him at the price. In view of all the facts in the case, we are of the opinion, that the court did not err in rendering judgment against the county, and it must be affirmed.

*Judgment affirmed.*