The County of DeWitt

*v.*

John Wright.

91  529
63a 661
91  529
78a  97
91  529
80a 657

1. PAUPERS—*liability of county for services rendered.* Under the present statute relating to paupers the overseer of the poor of a town has no power to render temporary relief to an indigent or poor person not required to be supported wholly by the county, contrary to the regulations and limitations prescribed by the county board, but he is bound by such regulations.

2. A rule and regulation of a county board that in case of need of medical aid by a poor person not required to be wholly supported by the county, the county physician should be resorted to, is a reasonable one, and if disregarded,

and another physician renders medical services in defiance of the rule, though by direction of an overseer of the poor, he can not recover for such services of the county.

3. FORMER DECISIONS. Since the cases of *The Board of Supervisors, etc.* v. *Plaut*, 42 Ill. 324, and *Supervisors of LaSalle County* v. *Reynolds*, 49 id. 186, the statute has been materially modified in respect of the questions above mentioned.

APPEAL from the Circuit Court of DeWitt county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. FULLER, GRAHAM & MONSON, and Messrs. MOORE & WARNER, for the appellant.

Messrs. DONAHUE & KELLY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee's claim against the county is based on this evidence: James Deland, who was the supervisor of the town of Clintonia, in DeWitt county, testified that, "Wright came to me and notified me, as overseer of the poor, that an old lady named Todd was sick, and had called on him for medical and surgical aid; that she had no property, and that I had better go and see her. I went, found her in bed, poor, and about 70 years old. She requested me to employ Wright to perform an operation upon her. Told her that the county had contracted with doctors to doctor the poor in this township, and named them. She objected, as they were young men and strangers, and that Wright had performed the same operation for her. She had confidence in him, and did not like to trust strangers; and although the county board had forbidden, my conscience would not allow me to refuse the old lady, so I called on Wright and told him that the old lady needed help, but that owing to the trouble the board had had with doctors' bills I could not and would not, as supervisor, employ him; but as overseer of the poor of the township I instructed him to go and render her assistance and I would

do all I could for him, and if the county board would not
allow it, I would see that he got his pay from the township,
or I would pay the bill myself. Wright replied, that if I
would instruct him to perform the services, and the board
would not allow the bill, he would trust to the courts, and not
hold the town or me for it. I again told him that I would
not bind the county, but as overseer of the poor instructed
him to attend to the case, and suppose he did so. [Witness
is here shown Wright's accounts.] This is my statement and
signature. I ordered the services rendered, not as supervisor,
but as overseer of the poor in town of Clintonia, where she
resided. The poor are supported at the poor house. Mrs.
Todd has never been an inmate of the poor house."

On cross-examination he testified: "I told Wright all the
time, when I employed him, that I thought the county would
not pay him; that I could not bind the county to pay. Mrs.
Todd was not a county charge—not in the poor house. As
overseer of the poor, I last winter helped her to a few gro-
ceries. She worked part of the time and supported herself."

Appellee, in his testimony, agrees with that given by the
supervisor, and he further says: "Deland stated over the
trouble the board had had about this class of doctors' bills,
substantially as he has stated it here. He told me to go and
render the services, and he would do all he could to have my
bill allowed by the county board; that he could not bind the
county, but as overseer of the poor he felt it his duty to em-
ploy me, and if the board failed to pay me, the township
would pay me. I replied that I would not rely upon the
township, but that if he would authorize me to perform the
services I would rely on the county, and if the board would
not pay, I would test the question of the county's liability in
the courts."

Evidence was offered by the appellant, but rejected by the
court, showing that at the time appellee treated Mrs. Todd,
for which he now seeks compensation, the county had in its
employ a competent physician and surgeon to furnish all

medicines and treat professionally all cases occurring in that township, for which the county was to become chargeable; and also that a certain rule or regulation of the board of supervisors was then in force, by which it gave notice that the county would not be liable for medical attendance, etc., by other than the regularly employed physicians, except in cer-· tain specified cases, which do not include that of Mrs. Todd.

Proper exception was taken to the several rulings of the court, so as to bring before us the question of· the county's liability, under the facts proved, and proposed to be proved, as above.

If the overseer of the poor can employ in such cases whom he pleases, as physician, and bind the county by his employment, in defiance of any prior conflicting regulation of the board of supervisors, this judgment must be affirmed, otherwise it must be reversed. The question· is purely one of power, nothing else, and the present, as the testimony of appellee shows, was designed as a test case.

Appellee's counsel rely with much confidence upon *The Board of Supervisors, etc.* v. *Plaut,* 42 Ill. 324, and *Supervisors of LaSalle County* v. *Reynolds,* 49 id. 186.

In the first of these cases it was held that where the overseer of the poor has entered into a contract for the support of a pauper, the liability of the county is thereby fixed, and its agents have no discretion, but must discharge the obligation. Still it was also said: "When the overseer of the poor has made an improvident and extravagant contract for the support of a pauper, that body," (*i. e.* the board of supervisors) "may, no doubt, when it is reported to them, reduce the amount; but until such action is had by the board, the contract, if fair and unaffected by fraud, will be binding on the county."

In the other case it was held that under section four of the pauper act, then in force, a liability was imposed upon counties to pay a reasonable compensation to a person who has been employed by the overseer of the poor, and who renders

medical aid to persons falling sick within the county, and having no money or property with which to pay for such services.

The law has been materially changed since those cases were decided.

It is provided by § 20, chap. 107, entitled "Paupers," (Rev. Stat. 1874, p. 756,) that, "The overseers of the poor shall have the care and oversight of all such persons in their town or precinct as are unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, and as are not supported by their relatives or at the county poor house, and shall see that they are suitably relieved, supported and employed, subject to such restrictions and regulations as may be prescribed by the county board, or in case the poor are supported by the town, subject to such restrictions and regulations as may be prescribed by such town."

When *The Board of Supervisors* v. *Plaut, supra,* was decided, the first part of this section was the law, and under it that case was decided; but the latter part, and especially that part which subjects the action of the overseers of the poor to "*such restrictions and regulations as may be prescribed by the county board,*" was not. See Rev. Stat. 1845, p. 403, § 6.

Then we have § 23, which was first enacted in the revision of 1874, as follows: "When any poor or indigent person does not require to be supported wholly by the county, the overseer of the poor may, *subject to such limitations as may be prescribed by the county board,* render him temporary relief without his being committed to the care of any such person," (*i. e.* person to whom the care of the poor of any town or precinct shall be committed,) "or being sent to the county poor house."

This seems to exactly meet Mrs. Todd's case. She is shown to have been poor or indigent, but not requiring to be supported wholly by the county.

Counsel for appellee insist that her case falls under § 24,

which is as follows: "Where any non-resident, or any person not coming within the definition of a pauper, of any county or town shall fall sick, not having money or property to pay his board, nursing and medical aid, the overseers of the poor of the town or precinct in which he may be shall give, or cause to be given to him, such assistance as they may deem necessary and proper, or cause him to be conveyed to his home, *subject to such rules and regulations as the county board may prescribe;* and if he shall die, cause him to be decently buried."

The original of this section, under which *The Board of Supervisors of La Salle County* v. *Reynolds, supra,* was decided, did not have the qualifying clause, "*subject to such rules and regulations as the county board may prescribe;*" but, instead, it was provided, "the overseers shall make such allowance for board, nursing, medical aid, or burial expense, as they shall deem just and equitable; which allowance shall be laid before the county commissioners' court, and the said court shall allow either the whole or such reasonable and just part thereof as ought to be allowed," etc.

We are of opinion that Mrs. Todd's case is not within the contemplation of this section. Her case is more accurately described by the § 23. But even if in this we are in error, we have seen that the overseer of the poor could only act subject to such rules and regulations as were prescribed by the county board. That board had made a rule and regulation that in case of need of medical aid by persons in the condition of Mrs. Todd, the physician designated and employed by the board should be resorted to. This regulation was known to and defied by appellee. The overseer of the poor had no power, and claimed none, to disregard it. The regulation was reasonable, and no circumstances are shown justifying a disregard of it.

The judgment is reversed.

*Judgment reversed.*